[S. F. No. 2041.  Department One.—July 22, 1902.]

## CASPER J. GARDNER, Appellant, v. CALIFORNIA GUARANTEE INVESTMENT COMPANY, Respondent.

REFORMATION OF BOND AND MORTGAGE—PLEADING—FRAUD—MISTAKE.— A complaint for the reformation of a bond and mortgage, which alleges the actual agreement between the parties and the particulars in which the written instruments depart from it, showing a large increase in plaintiff's indebtedness, and the omission of important rights given him by the agreement, and alleging, in effect, that the instruments were thus drawn by defendant's agent with the intent and effect of defrauding the plaintiff, by substituting a different contract for the one actually agreed upon, and that, by the fraudulent representations of the agent, the plaintiff was deceived and led to believe that the real agreement was in fact expressed in the writings, is not objectionable on the ground that the facts constituting the fraud are not sufficiently specific. In such a case the fact of actual fraud is generally immaterial; and the mistake of the parties, or of one party, known to or suspected by the other, is equally ground for relief.

ID.—STATUTE OF LIMITATIONS.—So long as the written contract sought to be reformed remains unbarred by the statute of limitations, that statute has no application to proof of the actual agreement between the parties or to a reformation of the contract. The contract really agreed upon is regarded as the only contract between the parties, and this is to be interpreted according to the real intention of the parties as proved. It is not necessary that the contract should be formally revised; nor is it necessary to inquire whether the discovery of the fraud is sufficiently alleged, or whether the complaint is amendable in that respect.

ID.—IMMATERIAL OBJECTION TO COMPLAINT.—Objections to the complaint on the questions of actual fraud and the statute of limitations are immaterial. It makes no difference whether the allegations upon those matters are defective or not, and they may be treated as surplusage.

ID.—EFFECT OF MISTAKE, HOW DETERMINED—PROPER AVERMENT.—The effect of the mistake can be determined by the court from a comparison of the written instruments with the actual contract alleged; and an averment that by the mistake in the written instruments the plaintiff is made to appear indebted to the defendant in twice the actual sum agreed upon is unobjectionable.

ID.—AVERMENT OF ACTUAL AGREEMENT—CERTAINTY—UNNECESSARY DETAILS.—It is sufficient that the actual agreement was stated in the complaint with clearness and certainty; and it was unnecessary to describe the investment fund, or the shares, otherwise than by the names given to them in the written instruments, or to set out the by-laws of the corporation. A general statement, if comprehensive and complete, cannot be assigned as indefinite or uncertain, although it may be the proof involves details.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

George W. Monteith, for Appellant.

Joseph Hutchinson, for Respondent.

THE COURT.—This is an appeal by the plaintiff from a judgment rendered on demurrer to the complaint.

The suit was brought for the reformation of a bond and mortgage executed by the plaintiff to the defendant, of date February 9, 1892,—which, it is alleged, through the fault of the defendant's agent, failed to express the real intention or agreement of the parties,—and for other relief. The amended complaint consists of three counts: the first for the reformation of the instruments in question; the second for an accounting; and the third for damages. The last is clearly insufficient to show a cause of action, and may be disregarded as surplusage. The others set forth the same facts as the original complaint, and do not differ substantially, except in the relief demanded. Together, they constitute but one cause of action, and should have been thus stated, as in the original complaint.

The mortgage in question purports to have been given "to secure a loan of . . . $3,000, . . . made on . . . sixty shares of the investment fund of" the defendant, on which the plaintiff agrees to make monthly payments of $36 until

the shares are fully paid up according to the tenor and effect of a bond of even date; which is made part of, and secured by, the mortgage. The conditions of the mortgage are, that the mortgage may be satisfied by the payment of "the sum of . . . $3,000 and interest *and premium,*" according to the tenor and effect of the bond, "on or before seven years from date," *or* by the surrender of the sixty shares of stock pledged after all dues thereon have been fully paid, or the stock has become "of the value of $100 per share."

In the bond referred to, which is for the penal sum of six thousand dollars, it is recited that "said Casper J. Gardner has bid in, in accordance with the by-laws of said company, the sum of . . . $3,000, . . . being the par value of . . . thirty shares, certificate No. 982, of the investment fund of said company, as and for a premium for the advancement to him by said company of . . . $3,000 . . . by way of anticipation of the value at their maturity of . . . sixty shares, certificate No. 982, of the investment fund of said company, now owned by said . . . Gardner," and that accordingly "the company has this day advanced to said . . . Gardner the sum of . . . $3,000 . . . in consideration of said premium and by way of anticipation"; and thereafter follows the condition that the bond shall become void, if Gardner shall pay the company "on or before seven years from date" the sum of $3,000 "and the full amount of the premium above mentioned," if said sixty shares shall have matured, or otherwise "so much of said premium as may have been earned" (at the rate of one seventh of the premium each year) at the time of the payment of the three thousand dollars in full, *or* shall surrender his sixty shares pledged after all dues thereon have been fully paid and the shares have become "of the par value of $100" per share.

The actual agreement as alleged in the complaint was:—

Plaintiff agreed to purchase sixty shares of the investment fund of the defendant by paying the sum of sixty dollars "as the amount of the premium and membership fee thereof." Defendant agreed to loan him three thousand dollars, payable on or before seven years from date, with interest, etc. Plaintiff further agreed to make payments on his shares of thirty-six dollars per month. Defendant agreed to conduct the business of the investment fund in the manner in which loans

commonly known as "building and loan association loans" are conducted, and thereby obtain the large profits that ordinarily result from compound interest, etc. Defendant further agreed that, at any time after the expiration of two years from the date of the loaning, the plaintiff, if he was in good standing and had kept paid all interest due upon said loan and monthly installments upon his shares, might withdraw his investment in his sixty shares of said investment fund and receive back the aggregate of the monthly installments paid by him, together with three fourths of the profits at that time standing to the credit of his shares, less a withdrawal fee of twenty cents per share, provided he should pay the loan, or have credited thereon, the amount he was entitled to withdraw, and pay the balance. And defendant further agreed to conduct the affairs of said investment fund in the manner in which funds of building and loan associations are conducted under the laws of the state, to loan out all moneys, etc., and to credit the profits arising *pro rata* upon the shares of the investment fund. Plaintiff, it is alleged, had paid all interest and dues at the date of the filing of the complaint, a period of a little over six years.

The principal points of divergence between the actual contract as alleged and the contract as executed is, that the latter makes the plaintiff debtor for the alleged premium of three thousand dollars in addition to the three thousand dollars loaned, and also fails to accord him the right of withdrawing his investment upon the terms agreed upon. Other allegations of the complaint will be referred to as occasion may demand.

The objections urged to the complaint are: 1. That the allegations as to the facts constituting the alleged fraud are not sufficiently specific; 2. That the cause of action appears to be barred by the statute of limitations; and 3. That the complaint is ambiguous, uncertain, and unintelligible.

The first of these objections is untenable. The complaint alleges the actual agreement between the parties, and the particulars in which the written instruments depart from it, —the result being a large increase of the plaintiff's indebtedness and the omission of important rights given him by the agreement; and it is alleged, in effect, that the instruments were thus drawn by the defendant's agent with the intent and the effect of defrauding the plaintiff by substituting

a different contract for the one actually agreed upon; and that, by the fraudulent representations of the agent, the plaintiff was deceived and led to believe that the real agreement was in fact expressed in the writings. In cases of this kind the fact of actual fraud is generally immaterial. The mistake of the parties, or the mistake of one known to or suspected by the other, is equally ground for relief. (Civ. Code, secs. 1640, 3399; Code Civ. Proc., sec. 1856, subd. 1.)

The objections on the score of the statute of limitations are equally untenable. Under the provisions of the codes, the contract really agreed upon is regarded as the only contract between the parties, and this is to be interpreted according to their real intention as proven; nor is it necessary that it should be formally revised. (Civ. Code, secs. 1640, 3399, 3402; Code Civ. Proc., sec. 1856.) Hence, while the contract remains in force, and not barred by the statute, there can be no bar to the proof of the real intention of the parties or to the reformation of the contract. It is therefore unnecessary to consider whether the discovery of the fraud is sufficiently alleged, or whether the complaint is susceptible of being amended in this particular.

It remains only to consider the objections to the complaint on the ground of ambiguity, uncertainty, and unintelligibility. These are sixteen in number, to each count, and are designated serially by letters from "a" to "p," inclusive. For convenience' sake they may be grouped in four clauses, the first being directed to the statement in the complaint of the actual agreement; the second, to the alleged effect of the mistake in the contract as executed; the third, to defects in the plaintiff's allegations as to the fraudulent representations of the defendant, and the manner in which the former was deceived; and the fourth, to the plaintiff's explanation of his failure to discover the fraud until the date named in the complaint.

Of these several classes of objections, all except the first go to immaterial matters. As we have said, neither the question of actual fraud nor that of the statute of limitations is material to the case, and it therefore makes no difference whether the allegations as to these are defective or otherwise; and as to the effect of the mistake, this can be determined by the court itself from a comparison of the written instruments with the actual contract. All these allegations may therefore

be treated as surplusage. (*Davidson* v. *Seligman*, 51 N. Y. Sup. Ct. 47; *Hughes* v. *Chicago R. R. Co.*, 45 N. Y. Sup. Ct. 114.)

It may be added, however, that the allegation of the complaint on the point last discussed is substantially correct, and the objections urged to it without ground. The allegation is, that by the mistake in the written instruments the plaintiff is made to appear indebted to the defendant in the sum of six thousand dollars instead of three thousand dollars. For, though half of the aggregate named is the *premium,* and the actual value of that is known only to the defendant, yet the plaintiff, if the shares are not already of the value of three thousand dollars, is bound by the mortgage to go on paying his monthly arrears until they become so.

With regard to the actual agreement, that, we think, is stated in the complaint with commendable clearness and certainty. It was unnecessary to describe the nature of the investment fund or of the shares otherwise than by the names given to them in the written instruments. Nor was it necessary to set out the by-laws of the corporation. "A general statement, if comprehensive and complete, although it may in the proof involve details, cannot be arraigned as indefinite or uncertain." (*Williams* v. *Folsom,* 57 Hun, 128.) The manner in which the business of the defendant was to be conducted is sufficiently described, in a general way, by reference to the modes of business of building and loan societies. There are other objections to the complaint, but they are equally trivial with the above, and it would not be profitable to consider them.

For the above reasons the judgment appealed from is reversed, and the superior court is directed to overrule the demurrer and allow the defendant a reasonable time within which to answer the complaint.