[Civ. No. 17408. Second Dist., Div. One. Apr. 18, 1950.]

LEONARD KLECKNER, Appellant, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, Respondents.

Laurence J. Rittenband and Jack Gold for Appellant.

Samuel B. Stewart, Jr., Hugo A. Steinmeyer, Robert H. Fabian, J. G. Moser and Richard A. Lavine for Respondent.

DRAPEAU, J.—Dave's Blue Room, Inc., was the corporate owner of a restaurant property on the Sunset Strip in Los Angeles. The real property was subject to three trust deeds, junior to each other in the following order: The first lien was to secure a promissory note to Bank of America; the second lien was to secure a note to the defendant, Marguerite Bruce Wetherbee; the third lien was to secure a note to the plaintiff, Leonard Kleckner.

Default was made in monthly payments of principal and interest due under the second trust deed. Notices of default and of sale were given, and the property was sold under a power of sale in the deed. The terms of sale prescribed in the trust deed, and recited in the notice of sale, were "cash in lawful money of the United States, payable at time of sale." Plaintiff received and read a copy of the notice of sale.

Defendant, Bank of America, is beneficiary under the first trust deed, and trustee under the second. There is no dispute respecting the first lien, the sale of the property having been made subject to the first trust deed.

This lawsuit grows out of the conduct of the sale by an assistant trust officer of the bank trustee, called by all of the parties the "auctioneer."

A number of persons were present at the sale. Some of them at times were argumentative, to say the least. Some contended with the auctioneer that the sale should be conducted like a bankruptcy sale, with a day or two allowed to get the money to support bids; others that he should take personal checks. When he announced that cash offers only would be accepted, considerable grumbling and rumbling ensued.

The auctioneer read the essential terms of the sale, and called

for bids. Fourteen thousand dollars was bid by an attorney for a Mr. Blythe; this covered the amount due on the second lien. Mr. Blythe was a friend and backer of plaintiff. No statement was made that this bid was on behalf of the plaintiff, and the auctioneer had no notice that it was. The auctioneer declared the property sold, pursuant to Mr. Blythe's bid.

The auctioneer asked to whom the trustee's deed should be made, and was informed that K. B. S. Construction Company would be the grantee. K. B. S. Construction Company was a corporation controlled by Mr. Blythe. Mr. Blythe testified on the trial that the title was to be held by his corporation to secure the cash he was advancing to plaintiff if the restaurant continued in operation, or to insure a part of possible profits for himself if the property was sold.

The auctioneer then asked for cash, to conform to the bid. He was told that the bidder did not have the cash, but would give him a check for the amount. The auctioneer stated that no personal checks would be received; that the sale was for cash; and that if cash was not immediately forthcoming he would declare the bid invalid and sell the property to some other bidder.

The bidder for Mr. Blythe stated that they would immediately go to the bank and get the cash, but the auctioneer refused to delay the sale. The auctioneer would have taken a cashier's check, a certified check, or a postal money order, but none of these was tendered.

The plaintiff and his financial backer left the sale and went by automobile to a bank about 14 blocks away. They made good time, six and one half minutes each way, and double parked in front of the bank. They were back at the place of sale with the money within 15 to 20 minutes. But they didn't make it. The auctioneer was gone, and the property had been sold to the beneficiary of the second trust deed for the amount due on her lien.

So the restaurant now belongs to the defendant Marguerite Bruce Wetherbee, subject only to the first trust deed; and the plaintiff finds his junior lien extinguished. And at the time Dave's Blue Room, Inc., was bankrupt.

The case was tried by a judge of the superior court. Findings were made, and judgment followed, declaring the beneficiary of the second trust deed owner of the property; that the sale was duly and properly made by the trustee; and that the trustee was not liable to the plaintiff for misconduct in the sale.

Plaintiff appeals from the judgment, and as grounds for reversal urges the following:

"1. Was the trustee justified in peremptorily demanding the *instantaneous* payment in cash of the entire amount bid by the appellant or was it the trustee's duty to procure the highest price for the property and in effectuating this purpose afford the appellant or any successful bidder a reasonable time to produce the necessary cash.

"2. Was the trustee obligated under the circumstances disclosed to adjourn the alleged second sale for a reasonable time to afford bidders at the sale the opportunity to withdraw currency from their banks to meet any bid made.

"3. Before the trustee could avoid the sale to appellant and hold him in default, was it under a duty to tender a deed to the property concurrently with its demand that appellant pay all the cash immediately.

"4. Was there any binding local custom proved on the trial that in sales of real property at public auction a successful bidder must instantaneously pay the entire amount of his bid in cash and no reasonable time accorded him to procure it."

■ A sale under a power in a mortgage or trust deed must be conducted in strict compliance with the terms of the power. The sale must be made fairly, openly, reasonably, and with due diligence and sound discretion to protect the rights of the mortgagor and others, using all reasonable efforts to secure the best possible or a reasonable price. (59 C.J.S. 959.)

■ If the auctioneer had been advised that the bid was on behalf of the plaintiff as beneficiary under the third trust deed, to have refused a request for delay of a few minutes to go to the bank might well have been held an unreasonable exercise of the trustee's power of sale. (See *Winbigler* v. *Sherman,* 175 Cal. 270 [165 P. 943].) But no such advice was given to the auctioneer. And he had a right to deem the bid as it was made a part of the conversation and argument then going on. Under the circumstances in this case the sale was not arbitrarily made, as the trial court found.

Moreover, the plaintiff could have tendered to the trustee the amount due on the second lien, and thereby terminated the power of sale under the second trust deed. (*Lichty* v. *Whitney,* 80 Cal.App.2d 696 [182 P.2d 582].)

It is the duty of a trustee, once it has started, to continue

with reasonable dispatch with a sale under a trust deed; the terms being cash, the trustee is not required to hold up the sale while sundry bidders leave the place to go to banks or elsewhere to get cash. Such conduct of a sale could well result in confusion, in the dispersal of bidders present, and in loss to persons represented by the trustee.

In execution sales it is the duty of the sheriff to require immediate payment in cash of the bid. (*Kelly* v. *Barnet*, 24 Cal.App. 119 [140 P. 605].) Civil Code, section 1657, provides that if an act consists in the payment of money only it must be performed immediately upon the thing to be done being exactly ascertained. In Wiltsie, Real Property Mortgage Foreclosure, 5th ed., 1939, volume 2, at page 1081, appears the following: ''But if any person other than the mortgagee becomes the purchaser, where the sale is for cash, he must comply strictly with the terms of sale, and pay the price bid in cash; a note to the party entitled to the proceeds of the sale is not cash, and the tender of such note will not be a compliance with the terms of sale. It has also been held that the officer may refuse to receive checks.''

What has been said disposes of all of plaintiff's contentions except the one that the trustee had to tender a deed of the property to the plaintiff concurrently with the demand for cash.

The answer to this is twofold: First, to state the contention is to deny it. Trust deeds are a part of business transactions. The right to sell property pledged under a power of sale, properly exercised, implements the security for payment of money loaned. To require trustees to have with them deeds to property pledged, to be executed and delivered to purchasers as the very time of sale, would unduly interfere with them. The method used, as shown by the testimony in this case, is for the auctioneer to give the successful bidder a receipt for the money paid; whereupon the deed is delivered in a day or two, giving the trustee time to prepare, and to have the instrument properly executed. And, secondly, the bid being ineffective, plaintiff had no right to a deed anyway.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied May 5, 1950, and appellant's petition for a hearing by the Supreme Court was denied June 12, 1950.